# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**CESAR BENITEZ ARZATE,**

      **Petitioner,**

  **v.**                               **Civil Action No.     2:03CV56**
                                                  **Criminal Action No.  2:01CR13**
                                                  **(Judge Maxwell)**

**UNITED STATES OF AMERICA,**

      **Respondent.**


## REPORT AND RECOMMENDATION/OPINION

## I. PROCEDURAL HISTORY

On July 17, 2003, the *pro se* petitioner, Cesar Benitez Arzate, an inmate at FCI-Fort Dix,

filed a Motion Under 28 U.S.C. §2255 to Vacate, Set Aside or Correct Sentence by a Person in

Federal Custody.  On July 18, 2003, the Court ordered the Government to answer the motion.  On

August 15, 2003,  the Government filed a Motion of the United States to Dismiss and Response to

Petitioner's Motion Made Pursuant to 28 U.S.C. §2255.   Thereafter, on September 5, 2003, the

petitioner filed Petitioner's Reply to Government's Motion and Response to Petitioner's §2255

motion.

On July 26, 2004, the petitioner filed a Motion for Leave to Supplement Petitioner's §2255

motion in order to raise a claim pursuant to <u>Blakely v. Washington</u>, 530 U.S. 466 (2004).

On August 17, 2004, the Court ordered the petitioner to answer the Court's interrogatories

regarding his claim of ineffective assistance of counsel for failure to file an appeal. On August 26,

2004, the petitioner filed Affidavit of Cesar Benitez Arzate in Support of Court's Interrogatories to Petitioner. On September 16, 2004, the petitioner filed the affidavit of Norma Benitez, his wife.

On March 8, 2005, May 10, 2005, June 14, 2005, and July 29, 2005 evidentiary hearings were held in this matter.

Thereafter, the matter was taken under advisement for review and the preparation of a report and recommendation pursuant to LR PL P 83.15.

## A. **Plea and Sentence**

On June 13, 2001, the petitioner was named in a three count indictment which charged him with conspiring to possess with the intent to distribute and to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, also known as "crank" in violation of 21 U.S.C. §§846 and 841(b)(1)(A)(viii)(Count One),  and interstate travel in aid of racketeering in violation of 18 U.S.C. §1952(a)(3)(Counts Two and Three).

On August 23, 2001, the petitioner signed a  plea agreement in which he agreed to plead guilty to conspiracy to distribute more than 500 grams of methamphetamine in violation of 21 U.S.C. §846.  In the plea agreement, the parties admitted that the following facts are true:

> That from the Summer of 1999 and continuing through June, 2001, the defendant Cesar Benitez-Arzate was involved in a conspiracy with individuals in West Virginia to distribute illegal narcotics containing methamphetamines, more commonly known as crank.  The defendant lived in the state of Virginia and would supply the illegal narcotics to the individuals in West Virginia who would transport them from Virginia to West Virginia for distribution.  The government and the defendant stipulate and agree that the amount of methamphetamines distributed would be in the range of 5 to 15 kilos.

The petitioner also agreed to waive his right to appeal.  Specifically, the waiver provision provided as follows:

If the Court finds that the applicable guideline range is level 33 or less, then the defendant waives the right under Title 18, U.S.C. §3742(a)(2) to appeal the sentence on any ground that it was imposed as a result of an incorrect application of the sentencing guidelines, and further waives his right to attack his sentence collaterally by virtue of 28 United States Code §2255.

On the same day that the petitioner signed the plea agreement, he entered his plea in open court. During the plea hearing, Steve Gerome, was sworn in as the interpreter, because the petitioner asserted that he does not understand English. At the conclusion of the plea hearing, the Court found that the plea was knowing and voluntary.

On July 12, 2002, the petitioner appeared before the Court for sentencing. The Court sentenced him to 151 months incarceration. The Judgment and Commitment Order was entered on July 15, 2002. The petitioner did not appeal his conviction and sentence.

## B. **Federal Habeas Corpus**

### **Petitioner's Contentions**

(1)     The plea colloquy failed to establish [a] factual basis for the guilty plea.

(2)     Petitioner's guilty plea was unknowing and involuntary.

(3)     Ineffective assistance of counsel.[1]

> (1)     Counsel failed to file a notice of appeal despite petitioner's request.
>
> (2)     Counsel failed to explain [to the] petitioner the nature of the charges against him and the law pertinent to them as well as the consequences of pleading guilty. Also counsel failed to object to the fact that there was no factual basis on the record for a guilty plea.
>
> (3)     Counsel failed to inform the court that petitioner's prior conviction was an uncounseled conviction which could not have been used to enhance his Federal sentence under the guidelines.

---

[1]The petitioner was represented by Walter F. Green and R. Mike Mullins.

**Government's Contentions**

(1)     The motion should be dismissed as being untimely and because the petitioner waived his right to file a §2255 motion.

(2)     The guilty plea was knowing and voluntary.

(3)     Counsel was not ineffective.

**Petitioner's Reply**

(1)     His motion is timely as he deposited the motion in the legal mail box on July 8, 2003.

(2)     His waiver was unknowing and involuntary.

## C.  Recommendation

The undersigned recommends that the petitioner's §2255 motion be granted in part and denied in part.

## II.  ANALYSIS

## A.  The Motion is Timely.

In 1996, the Anti-Terrorism and Effective Death Penalty Act of 1996 ["AEDPA"] was enacted, establishing a one-year limitation period within which to file any federal habeas corpus motion.  28 U.S.C. §2255.[2]

The limitation period shall run from the last of:

(1)     the date on which the judgment of conviction becomes final;

(2)     the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by

---

[2]The AEDPA applies to those cases filed after April 24, 1996, the effective date of the AEDPA. Lindh v. Murphy, 521 U.S. 320 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir.), cert. denied, 523 U.S. 371 (1998).

such governmental action;

(3)　　　the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)　　　the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2255.

The United States Supreme Court held in <u>Houston v. Lack</u>, 487 U.S. 266, 276 (1988), that a notice of appeal is considered filed under federal law when it is given to prison officials, not when it is received by the court. In unpublished decisions, the Fourth Circuit has applied <u>Houston v. Lack</u> to §2255 motions. <u>See e.g.</u>, <u>United States v. Jordan</u>, 94 Fed. Appx. 192, 2004 WL 817779 (4th Cir. 2004)(unpublished). [3]

The petitioner dated his motion "July 8, 2003", and he submitted a copy of a Certified Mail Receipt which was addressed to the District Court Northern District West Virginia and was post marked on July 11, 2003, in Fort Dix, New Jersey. Thus, applying <u>Houston v. Lack</u>, the petitioner's §2255 motion is deemed filed on July 11, 2003.

The Fourth Circuit has held that for purposes of the one-year limitations period for filing motions to vacate, the petitioner's conviction becomes final on the date on which the district court entered his judgment of conviction if the petitioner does not pursue direct appellate review. <u>United States v. Sanders</u>, 247 F.3d 139 (4th Cir. 2001), <u>cert. denied</u>, 534 U.S. 1032 (2001). In reaching this decision, the Sanders court relied on <u>United States v. Torres</u>, 211 F. 3d 836 (4th Cir. 2000)[4]

_____

[3]Pursuant to Fourth Circuit Local Rule 36(c), which disfavors citation of unpublished opinions, copies of these unpublished opinions are attached.

[4]In <u>Torres</u>, the Fourth Circuit held that "for purposes of § 2255, the conviction of a federal prisoner whose conviction is affirmed by this Court and who does not file a petition for certiorari becomes final on the date that this Court's mandate issues in his direct appeal." <u>Torres</u>, 211 F.3d at 837.

which has been abrogated by  Clay v. United States, 537 U.S. 522 (2003).   In Clay, the Supreme

Court held that when a prisoner does not file a petition for writ of certiorari with the United States

Supreme Court, the judgment of conviction becomes final when the time for seeking such review

expires.   In slip opinions, the Western District of Virginia, the Eastern District of Virginia, and the

Middle District of North Carolina have extended  the rule in Clay to instances were no direct appeal

has been filed to determine that the conviction becomes final after the 10 day appeal period has

elapsed, not when the judgment is entered. See Hammack v. United States, 2005 WL 1459767 (W.D.

Va. 2005);  Langley v. United States, 2005 WL 1114316, *1 (M.D.N.C.2005); and Arnette v. United

States, 2005 WL 1026711 (E.D. Va. 2005).  The undersigned agrees with the application of Clay

by the Western District of Virginia, the Eastern District of Virginia, and the Middle District of North

Carolina.

Because the petitioner's Judgment and Commitment Order was entered on July 15, 2002, the

petitioner had until July 25, 2003 to file a §2255 motion.  Thus, the petitioner's §2255 motion is

timely.

**B.  Waiver**

The Government asserts that the §2255 motion should be dismissed because the petitioner

waived his right to collaterally attack his sentence.  The petitioner counters that his motion should

not be dismissed because his waiver was unknowing and involuntary, and he received ineffective

assistance of counsel during the plea agreement.

For years, the Fourth Circuit has held that waiver of appellate rights in a plea agreement is

valid as long as it is knowing and voluntary. See United States v. Attar, 38 F.3d 727 (4th Cir. 1994),

cert. denied, 514 U.S. 1107 (1995). Recently, in United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005), the Fourth Circuit held that it saw no reason to distinguish between waivers of direct-appeal rights and waivers of collateral-attack rights.[5] Thus, the Fourth Circuit held that the waiver of the right to collaterally attack a sentence is valid as long as it is knowing and voluntary. Id. The Fourth Circuit also noted that it has allowed a "narrow class of claims" to be raised by a defendant on direct appeal despite a general waiver of appellate rights. Specifically, the Fourth Circuit noted that pursuant to United States v. Marin, 961 F.2d 493 (4th Cir.1992) "'a defendant could not be said to have waived his right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race'" and that pursuant to United States v. Attar, 38 F.3d 727, 732 (4th Cir.1994) "a general waiver of appellate rights could not be construed to bar a defendant from raising a claim that he had been wholly deprived of counsel during his sentencing proceedings." Id. at 220, n. 2. However, because Lemaster did not argue that his claims fell within one of these exceptions, the Fourth Circuit did not address whether a court should address similar claims in a §2255 motion despite a waiver of the

_____

[5]In Lemaster, the Fourth Circuit stated that "[l]iberally construed, Lemaster's petition alleged, inter alia, that his guilty plea, and thus his waiver of collateral-attack rights, was unknowing and involuntary because (1) his counsel's initial explanation of the proposed plea agreement differed substantially from the final version of the plea agreement and that his counsel failed to explain the changes to him; (2) his counsel failed to inform him, or misinformed him, of the potential punishment that he faced under the plea agreement; and (3) Lemaster was threatened that he would be denied adequate medical care unless he pleaded guilty." United States v. Lemaster, 403 F.3d 216, 219 (4th Cir. 2005).

Lemaster also raised the following claims which were unrelated to the voluntariness of his plea or the waiver of his right to collaterally attack his sentence: "his counsel was constitutionally ineffective in the following respects: (1) counsel failed to provide Lemaster with a copy of the presentencing report; (2) counsel failed to object to the presentencing report as directed by Lemaster; (3) counsel failed to request a downward departure based on Lemaster's diminished capacity; (4) counsel failed to request a downward departure based on Lemaster's deteriorating medical condition; and (5) counsel ignored Lemaster's correspondence." Id.

right to file a collateral attack. Nonetheless, the Fourth Circuit reiterated that it saw no reason to treat waivers of collateral attack rights different than waivers of direct appeal rights. Id.

In Lemaster, the Fourth Circuit found that the petitioner's claims regarding the involuntariness of his plea was contradicted by his statements made during the Rule 11 hearing. Thus, the Fourth Circuit found that the plea and waiver were knowing and voluntary and affirmed the district court's dismissal of Lemaster's §2255 motion based on his waiver of his rights to collaterally attack his sentence.

In determining whether a waiver is "knowing and intelligent, the court must review "the particular facts and circumstances surrounding [the] case, including the background, experience and conduct of the accused." United States v. Davis, 954 F.2d 182,186 (4th Cir. 1992) (quoting Johnson v. Zerbst, 304 U.S. 458 (1938)). A waiver is valid if the district court fully questioned the defendant about the waiver during a hearing that meets all the requirements of Rule 11 of the Federal Rules of Civil Procedure. United States v. Wessells, 936 F.2d 165, 167-68 (4th Cir.1991).

With regard to the waiver of the right to appeal or collaterally attack his sentence, the Court questioned the petitioner regarding whether he understood he was waiving his right to appeal his conviction and sentence. The petitioner stated that he understood. However, the Court did not inquire as to whether the petitioner understood he was waiving his right to collaterally attack his conviction and sentence. Thus, the undersigned finds that the record is silent regarding whether the waiver of the right to collaterally attack was voluntary and therefore, finds that the waiver does not bar the petitioner's claims.

The undersigned now turns to whether the plea was knowing and voluntary. At the outset, the undersigned notes that during the hearing, the petitioner was assisted by an interpreter because

he could not read and write in English or speak the English language.

The petitioner alleges that his plea was not knowing because he was confused and mislead, he was never advised of the elements of the charge, he has minimal formal education and little familiarity with the American legal system. He also alleges that he did not know that "an agreement" was an element of the conspiracy charge and had he known so he would not have pled guilty but would have proceeded to trial. He further asserts that even though he stipulated to the amount of relevant conduct he thought he would be accountable only for the 500 grams charged in the indictment.

Pursuant to Rule 11, the court must "inform the defendant of, and ensure that he understands, the charges against him and the consequences of his guilty plea. United States v. Damon, 191 F.3d 561, 564 (4th Cir. 1999). If the defendant does not understand his constitutional protections and the charges made against him, the guilty plea is invalid. Henderson v. Morgan, 426 U.S. 637, 645 (1976).

At the beginning of the plea hearing, the Court advised the petitioner as follows:

> The Defendant should know that he must feel free to ask questions, to ask for an explanation whenever he does not understand questions asked of him, and to discuss any matters with counsel and his interpreter before he answers.

(Plea hearing tr. at 6).

The petitioner never indicated during the plea hearing that he was confused or mislead or did not understand the elements of the offense. During the plea hearing, the Court read Count One to the petitioner. Count One provides in part as follows:

> Cesar Benitez-Arzate did knowingly and willfully combine, conspire, confederate and agree and have a tacit understanding with persons known and unknown to the Grand Jury, to commit an offense against the United States, to wit: to violate Title 21, United States Code, Section 841(a)(1). It was the purpose and object of the

conspiracy knowingly and intentionally to possess with intent to distribute and to distribute methamphetamine.

The petitioner never asked any questions about the indictment or indicated in any fashion that he did not understand the nature of the charges. Moreover, Mr. Mullins stated during the plea hearing that "at the initial arraignment, we had an interpreter from Pittsburgh, at which time I personally went over the indictment with Cesar and explained everything, and he has listened to what we explained and understands it as presented to him." (Plea hearing tr. at 8).

During the hearing, the Court advised the petitioner that the offense was subject to a mandatory minimum sentence of ten years. The petitioner stated he understood he was facing a mandatory minimum sentence. The Court also established that the petitioner understood the nature of the charges, and the consequences of his guilty plea. The petitioner also stated that he understood and agreed with the terms of the plea agreement, and that he understood the concept of relevant conduct. (Plea hearing tr. at 17, 20).

Further, the record reveals that a factual basis existed for the petitioner's guilty plea. The court may find a factual basis for a plea "from anything that appears on the record." United States v. DeFusco, 949 F.2d 114, 120 (4th Cir. 1991). During the plea hearing, the Government presented the testimony of Mike Garrett, a sergeant with the West Virginia State Police. Sergeant Garrett testified that he was involved in an investigation of an individual named Albert Martin. The investigation involved controlled buys with Martin in Pendleton County, West Virginia. Testing of the substance purchased from Martin revealed it was methamphetamine. Martin stated he got the methamphetamine from Marty Moats. Sergeant Garrett spoke to Moats who stated that for more than a year he had been getting the methamphetamine from an individual called Jesus in Virginia. Sergeant Garrett stated that further investigation revealed that Jesus was the petitioner.

The petitioner's assertion that Garrett's testimony "failed to establish any facts or acts to support the existence of an agreement during the time frame of the conspiracy charged in Count One" is without merit.

The Court asked Garrett the following question: "The indictment speaks in terms of the offense occurring from the summer of 1999 to on or about the date of the indictment. Do you have any more firm dates on that?" (Plea hearing tr. at 29). Garrett responded "No, sir. The actual dates of our controlled buys from Albert Martin was of this year. Those dates provided to us by the Defendant himself, with no exact dates being given, to my knowledge." (Id.) Moreover, the petitioner stipulated to the conspiracy and the time frame the conspiracy occurred. Thus, there was a factual basis for the plea. Therefore, contrary to the petitioner's assertion there was no need for his attorney to object to there being no factual basis for the plea.

Based on the statements given during the plea hearing, the Court properly found that the plea was voluntary and knowing. A defendant's statement that his plea is voluntary and knowing is generally considered conclusive on these issues. Savino v. Murray, 82 F.3d 593, 603 (4th Cir. 1996). "Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." Fields v. Attorney Gen. of Maryland, 956 F.2d 1290, 1299 (4th Cir. 1992), cert. denied, 506 U.S. 885 (1992).

Moreover, while the petitioner states his attorney was ineffective regarding the plea, during the plea hearing, the petitioner stated that his attorney had adequately represented him and that he and his attorneys had found no defense to the charge.

In evaluating a post guilty plea of ineffective assistance of counsel, statements made under oath affirming satisfaction with counsel are binding, absent clear and convincing evidence to the

contrary. Blackledge v. Allison, 431 U.S. 63, 74-75 (1977). A defendant who alleges ineffective assistance of counsel following a guilty plea has an even higher burden: he "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988), cert. denied, 488 U.S. 843 (1988).

Here, the petitioner asserts in his motion that he would have gone to trial instead of pleading guilty, had his attorney advised him that an agreement was an element of the conspiracy offense. However, such assertion is entitled to little weight. The petition must be based on more than a "bare allegation that but for counsel's error, he would have pleaded not guilty and gone to trial." Armstead v. Scott, 37 F. 3d 202, 210 (5th Cir. 1994).

The petitioner also briefly mentions in his memorandum supporting his §2255 motion that he was never advised by the Court or his attorney that the conviction would be used to start a deportation proceeding against him. The "failure to advise him of a collateral penalty cannot be held to be below an objective standard of reasonableness." Torrey v. Estelle, 842 F. 2d 236-37 (9th Cir. 1988). "An attorney's failure to advise a client that deportation may result from a conviction does not constitute ineffective assistance of counsel." United States v. Yearwood, 863 F.2d 6, 7-8 (4th Cir. 1988).

Consequently, the undersigned finds that the petitioner was not provided ineffective assistance of counsel during the plea process and that the petitioner's plea was knowing and voluntary.

**B. Ineffective Assistance of Counsel.**

Counsel's conduct is measured under the two part analysis outlined in Strickland v.

Washington, 466 U.S. 668, 687 (1984). First, the petitioner must show that his counsel's performance fell below an objective standard of reasonableness. Id. at 688. In reviewing claims of ineffective assistance of counsel, "judicial scrutiny of counsel's performance must be highly deferential," and the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 689-90.

Second, the petitioner must be prejudiced by counsel's performance. In order to demonstrate prejudice, "the defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. If the defendant shows no prejudice from the alleged ineffectiveness of counsel, courts need not address counsel's performance. Fields v. Att'y Gen. of Maryland, 956 F.2d 1290, 1297 (4th Cir.), cert. denied, 506 U.S. 885 (1992).

### 1. Failure to File an Appeal

The petitioner alleges his attorney was ineffective because he instructed his attorney to file an appeal, but his attorney failed to do so, and his attorney mislead him into believing that an appeal had been filed. The Government asserts that this claim is barred by the waiver. The undersigned concludes that the waiver was voluntary but that the petitioner did not and could not knowingly and voluntarily waive a future and non-contemplated failure of counsel to file a direct appeal when timely requested.

The Fourth Circuit Court of Appeals has held that "a criminal defense attorney's failure to file a notice of appeal when requested by his client deprives the defendant of his Sixth Amendment right to the assistance of counsel, notwithstanding that the lost appeal may not have had a reasonable

13

probability of success." <u>United States v. Peak</u>, 992 F.2d 39, 42 (4th Cir. 1993).

Peak was convicted on his plea of guilty to crack cocaine distribution. His plea agreement stated the 20 year statutory maximum sentence he would subject himself to under the plea. The pre-sentence investigation recommended Peak be sentenced as a career offender. The sentencing court adopted the recommendations in the pre-sentence report and sentenced Peak to 168 months, a sentence which exceeded Peak's expectations and appeared to surprise Peak's counsel. Peak claimed he told his attorney to appeal his sentence. No appeal was taken. Peak attempted to file a late appeal or appeal out of time which was rejected by the appellate court. On January 8, 1991, Peak filed his pro se §2255 motion asserting claims of ineffective assistance of counsel, improper resolution of his objections to the pre-sentence report; breach of the plea agreement and improper application of the career offender guidelines. Peak's counsel was no where to be found, thus, making it impossible for the Government to determine whether counsel could or would contradict Peak's assertion that he had asked his counsel to file an appeal. The Government virtually conceded the argument. However, the district court dismissed the §2255 motion.

Peak appealed to the Fourth Circuit Court of Appeals. The Fourth Circuit reversed the district court, and remanded the case with instructions to vacate Peak's judgment of conviction and enter a new judgment from which an appeal could be taken. In rendering this decision, Circuit Judge K.K. Hall, writing for the appellate court in <u>Peak</u>, opined:

> Persons convicted in federal district courts have a right to a direct appeal. <u>Coppedge v. United States</u>, 369 U.S. 438, 82 S.Ct.917, 8 L.E.2d 21 (1962). In addition, the Sixth Amendment right to counsel extends to the direct appeal, <u>Douglas v. California</u>, 372 U.S. 353, 83 S.Ct. 917, 8 L.Ed.2d 811 (1963), and it obligates the attorney to file the appeal and identify possible issues for the court even if, in the attorney's opinion, those issues are not meritorious. <u>Anders v. California</u>, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

<u>Id.</u> at 41.

In analyzing the impact of the prejudice prong of <u>Strickland</u> in the situation where an attorney failed to file a requested appeal, Judge Hall followed the language of <u>Rodriquez v. United States</u>, 395 U.S. 327, 329-330 (1969):

> The [court of appeals] seems to require an applicant under 28 U.S.C. § 2255 to show more than a simple deprivation of this right [the right to appeal] before relief can be accorded. It also requires him to show some likelihood of success on appeal; if the applicant is unlikely to succeed, the [court of appeals] would characterize any denial of the right to appeal as a species of harmless error. We cannot subscribe to this approach. . . . Those whose right to appeal has been frustrated should be treated exactly like any other appellants; they should not be given an additional hurdle to clear just because their rights were violated at some earlier stage in the proceedings. <u>Id.</u> at 41-42.

Judge Hall for the Court of Appeals explained the difference between deprivation of counsel as discussed in <u>Strickland</u> and <u>Rodriquez</u> stating: "<u>Strickland</u> is concerned with attorney performance in the course of representation. . . . not . . . to deprivations altogether, . . . However effective or ineffective Peak's counsel was before the judgment of conviction, his failure to file the requested appeal deprived Peak of the assistance of counsel on direct appeal altogether." <u>Id.</u>

Further, in <u>Roe v. Flores-Ortega</u>, 528 U.S. 470 (2000), the Supreme Court recognized that "[i]f counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 478 (2000).

However, in an unpublished decision, <u>United States v. Murphy</u>, 1 Fed. Appx. 111, 2001 WL 9857 (4th Cir. 2001)(unpublished), the Fourth Circuit found that the waiver of the right to appeal did not justify dismissing a §2255 claim of ineffective assistance of counsel for failure to appeal as

requested.[6]  In Murphy, the district court dismissed the §2255 motion and "determined that because Murphy waived his right to appeal his sentences and convictions except for claims regarding ineffective assistance of counsel and prosecutorial misconduct not known at the time he pled guilty, Murphy was not prejudiced by counsel's failure to note an appeal because an appeal would have been futile."  However,  the Fourth Circuit  found that counsel's failure to appeal as requested is presumptively prejudicial and remanded the case to the Eastern District of North Carolina for further proceedings.  See also, United States v. Cottle, 134 F.3d 364 (4th Cir. 1998)(unpublished)(Fourth Circuit remanded case to the Eastern District of North Carolina  regarding the petitioner's allegations in his §2255 motion that his attorney failed to file an appeal as requested even though petitioner had waived his right to appeal his sentence.).[7]

Additionally, the Ninth Circuit has held that "when counsel fails to file a requested appeal, a defendant is entitled to re-sentencing and to an appeal without showing that his appeal would likely have had merit.'  This proposition may amount to saying 'it is ineffective assistance of counsel to refuse to file a notice of appeal when your client tells you to, even if doing so would be contrary to the plea agreement and harmful to your client,' but that is the law on filing a notice of appeal." United States v. Sandoval-Lopez, 409 F. 3d 1193, 1197 (9th Cir. 2005)(quoting Perguero v. United States, 526 U.S. 23 (1999)). The Ninth Circuit further stated that "[t]he prejudice in failure to file a notice of appeal cases is that the defendant lost his chance to file the appeal, not that he lost a favorable result that he would have obtained by appeal."  Id.

---

[6]Pursuant to Fourth Circuit Local Rule 36(c), which disfavors citation of unpublished opinions, a copy of this unpublished opinion is attached.

[7]Pursuant to Fourth Circuit Local Rule 36(c), which disfavors citation of unpublished opinions, a copy of this unpublished opinion is attached.

In the instant case, the Court ordered the petitioner to respond to its interrogatories and held numerous evidentiary hearings in an attempt to determine whether the petitioner had in fact requested Green to file an appeal.   In response to the Court's interrogatories, the petitioner stated that on July 12, 2002, he instructed Green, through his interpreter,  to file an appeal on his behalf and 3-4 days later, his wife went to Green's office and requested that an appeal be filed. He further asserts that on February 8, 2003, he  wrote Green  regarding whether an appeal had been filed.  He did not receive a response. So, his wife went to Green's office, and he told her an appeal had not been filed.

The petitioner also submitted the affidavit of his wife. She stated that on or about July 14, 2002, she went to Green's office and asked him if an appeal had been filed.   He advised her an appeal would be filed.  In February 2003, she went back to Green's office and was told "he was not filed anything."

The undersigned conducted evidentiary hearings were conducted on the issue of whether the petitioner requested that his lawyer file an appeal.   The petitioner's lawyer testified that because he does not speak Spanish, he communicated with the petitioner and his wife through an interpreter. According to the interpreter, the petitioner did not request that Green file an appeal.  However, his conclusory statement is questionable because, he had little recollections of what actually took place in the meetings that were held after sentencing; he had no notes or other reminders; and  because, at the time of the events in question (the meetings in question)  he was concentrating on translating and interpreting and not on the substance of the communications between client and counsel or between client's wife and counsel.

The petitioner's wife stated that she went to Green's office at some point after sentencing

(July 14, 2002) and asked him to file an appeal for the petitioner.

Based on the testimonies, the observation the undersigned made of the witnesses appearing before him in the multiple hearings including the demeanor of those witnesses and their candor and lack of candor (Green), the undersigned finds the petitioner's attorney to be less credible than the petitioner and the petitioner's wife. The petitioner and his wife have not wavered in their allegations against Green. Their versions were consistent one with the other notwithstanding that they have been separated by Petitioner's imprisonment since prior to sentencing. Moreover, Green's credibility is called into serious question given that he was reprimanded in the State of Virginia in 1999; that in September 2000 he received a 90 day suspension of his law license; and on February 20, 2000, he received a public reprimand for failing to communicate with his client and other acts the undersigned finds strikingly similar in nature to the acts complained of by petitioner. The undersigned determines that, based on the testimony given at the evidentiary hearings, the petitioner requested that his attorney (Green) file an appeal but his attorney failed to do so. The undersigned concludes from the evidence presented at the multiple hearings that the request that an appeal be filed was made in the meeting between counsel and client immediately following the sentencing hearing and that petitioner's wife followed up with a renewal of the request in a meeting with counsel on or about July 14, 2002. This finding is substantiated by jail records admitted in evidence reflecting that there was a meeting between petitioner and his counsel for approximately 10 to 15 minutes on the date of sentencing at an hour that would have been shortly following the conclusion of the sentencing hearing which was scheduled to begin at 1:00 pm. It is not lost on the undersigned that in spite of the government's attempt to get the file and telephone records of attorney Green, the separate order of the undersigned requiring Attorney Green to provide specific records to support

18

any claim that no request for appeal was made by petitioner, including telephone records (redacted), Attorney Green first appeared without the requested records and later appeared with limited records. None of the records contained any notations relative to the substance or subject matters to be discussed or which were actually discussed between attorney and client or between the client's wife and the attorney. Therefore, the undersigned concludes that, with respect to the duty of counsel to timely file the requested appeal, the petitioner's attorney was ineffective. Consequently, the undersigned recommends that the Court vacate and re-enter the prior judgment so the petitioner can pursue a direct appeal.

## 2. Failure to Object to Prior Uncounseled Conviction Being Used to Calculate Sentence

The petitioner also asserts that his counsel was ineffective regarding how he handled the petitioner's criminal history. The petitioner assets that a shoplifting conviction was erroneously used to determine his criminal history. At sentencing, he argued that he was never involved in a shoplifting case and thus, his criminal history should be one, not two. Now, he argues he was convicted for shoplifting but the conviction was uncounseled and thus, his attorney should have objected to the conviction being used to determine his criminal history.

"A sentencing court must count a predicate conviction that has not been reversed, vacated, or invalidated in a prior case, unless federal law or the Constitution secures the defendant's right to challenge the conviction in the current sentencing proceeding." United States v. Bacon, 94 F. 3d 158, 161 (4th Cir. 1996); see also U.S.S.G. § 4A1.2 comment (n. 6).

According to the petitioner, the shoplifting conviction should have not been counted because he was denied his constitutional right to counsel. However, with regard to misdemeanors, "the Sixth and Fourteenth Amendments to the United States Constitution require only that no indigent

criminal defendant be sentenced to a term of imprisonment unless the State has afforded him the right to assistance of appointed counsel in his defense." Scott v. Illinois, 440 U.S. 367, 374 (1979). Thus, a prior uncounseled misdemeanor conviction may be counted in a defendant's criminal history if no sentence of imprisonment was imposed. Nichols v. United States, 511 U.S. 738 (1994). However, recently, the United States Supreme Court held that if the defendant receives a suspended or probated sentence he has a constitutional right to counsel. Alabama v. Shelton, 535 U.S.634, 674 (2002).

In the instant case, the petitioner received one point for a shoplifting conviction in municipal court in Tifton, Georgia. It appears from the PSR that the only sentence imposed was a $560.00 bond forfeiture. The PSR further provides as follows:

> Attorney representation is unknown. It is the municipal court's policy that if a defendant fails to show for a court date and his bond is forfeited, they waive attorney representation. The only available records reveal that the defendant was arrested on the above noted date. In cases of this nature in the State of Georgia, if a defendant posts a bond and then elects to not show for his court date, they forfeit the bond as if it were a fine.

Accordingly, there is no information that the shoplifting conviction was a felony. There is information that petitioner was only fined for the shoplifting conviction. Therefore, the petitioner's attorney was not ineffective for failing to argue that the conviction should not have been used to determine the petitioner's criminal history because the conviction was uncounseled.

### III.  MOTION FOR LEAVE TO SUPPLEMENT

In his motion to supplement, the petitioner states that his sentence violates his constitutional rights in light of Blakely v. Washington, 530 U.S. 466 (2004).[8]

---

[8]Blakely v. Washington, 542 U.S. 296 (2004) as an extension of Apprendi v. New Jersey, 530 U.S. 466 (2000), holds that "when a judge inflicts punishment that the jury verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment, and the judge

The Rules Governing Section 2255 do not address amending 2255 motions. However, the Fourth Circuit Court of Appeals has recognized that Rule 15 of the Federal Rules of Civil Procedure can be applied to the amendment of a §2255 motion. United States v. Pittman, 209 F. 3d 314 (4th Cir. 2000).

Federal Rule of Civil Procedure 15(a) provides that "a party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." "In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance to the amendment, futility of amendment, etc. -- the leave sought should, as the rule requires, be 'freely given.'" Foman v. Davis, 371 U.S. 178, 182 (1962). See also Sandcrest Outpatient Services, P.A. v. Cumberland County Hosp. System, Inc., 853 F.2d 1139, 1148 (4th Cir. 1988).

Here, it would be futile to allow the petitioner to amend his motion because Booker, does not apply retroactively to §2255 motions when the judgment was final as of the date the Supreme

---

exceeds his proper authority."
Recently, the Supreme Court has held that Blakely applies to federal sentencing guidelines. United States v. Booker, ___ U.S.___, 125 S.Ct. 738 (2005). Specifically, in Booker the Supreme Court issued a two part decision. In the first part, the Supreme Court held that the mandatory sentencing guidelines violated a defendant's Sixth Amendment right to a jury trial because a judge, not a jury, determines facts which could increase the defendant's sentence beyond the sentence which could be imposed based on jury fact finding. In the second part of the decision, the Supreme Court severed the unconstitutional provisions from the Sentence Reform Act and made the guidelines advisory and established an unreasonableness standard of review for sentences on appeal. Thus, the petitioner's Blakely claim is now a Booker claim.

Court issued <u>Booker</u>. <u>See</u> <u>Varela  v. United States</u>, 400 F. 3d 864  (11th Cir. 2005); <u>United States v. Price</u>, 400 F. 3d 844 (10th Cir. 2005); <u>Never Misses a Shot v. United States</u>, 413 F. 3d 781 (8th Cir. 2005); <u>McReynolds v. United States</u>, 397  F. 3d 479 (7th Cir. 2005); <u>Humphress v. United States</u>, 398 F. 3d 855 (6th Cir. 2005); <u>Lloyd v. United States</u>, 407 F. 3d 608 (3d Cir. 2005); <u>Guzman v. United States</u>, 404  F. 3d 139 (2d Cir. 2005).

Because the petitioner's conviction became final prior to the issuance of the <u>Booker</u> decision, in accordance with the just mentioned decisions, the Court finds that the petitioner is not entitled to have <u>Booker</u> applied retroactively to his sentence and his motion to supplement should be denied.

## IV.  RECOMMENDATION

For the reasons stated herein, it is accordingly recommended that the Court enter an Order denying in part and granting in part the §2255 motion of the petitioner. Specifically, the undersigned finds that the petitioner's attorney was ineffective for failing to file an appeal as requested. Thus, it is recommended that the Court vacate and renter judgment so the petitioner can pursue a direct appeal.  It is further recommended that the petitioner's motion for leave to supplement be denied as being futile and that the Government's motion to dismiss be denied because the motion was timely filed.

Any party may file within ten (10) days after being served with a copy of this Recommendation with the Clerk of the Court written objections identifying the portions of the Recommendation to which objections are  made, and the basis for such objections.  A copy of such objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge.  Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation.  28 U.S.C.

§ 636(b)(1); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir.), <u>cert. denied</u>, 467 U.S. 1208 (1984); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).

The Clerk of Court is directed to mail a copy of this Report and Recommendation/Opinion to the *pro se* petitioner and the United States Attorney.

Dated: September 16,  2005

/s *John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE